216 P.3d 1072 (2009)
STATE of Washington, Respondent,
v.
Daniel Wayne LACKEY, Appellant.
No. 37682-2-II.
Court of Appeals of Washington, Division 2.
September 15, 2009.
*1073 Thomas E. Weaver Jr., Attorney at Law, Bremerton, WA, for Appellant.
Juelanne B. Dalzell, Attorney at Law, Prosecuting Attorney, Port Townsend, WA, Thomas A. Brotherton, Jefferson County Prosecuting Attorney, Port Townsend, WA, for Respondent.
SWEENEY, J.
¶ 1 Daniel Lackey appeals his conviction for delivery of a controlled substance. He argues that the trial court erred in denying his motion to dismiss for violation of his CrR 3.3 speedy trial rights. Washington's speedy trial rule requires that a defendant be brought to trial within 90 days of arraignment if he is not confined in jail. Here, the defendant was tried 323 days after he was arraigned. Some of the delays were chargeable to the defendant, some to the State; many were the result of what we conclude was routine court congestion. But due to Washington's vacuous speedy trial rule, CrR 3.3, we are constrained to conclude that the defendant's right to a speedy trial was not violated. We also conclude that his constitutional right to a speedy trial was not violated. And we, therefore, affirm his conviction for delivery of a controlled substance.

FACTS
¶ 2 Jefferson County sheriff's deputies worked with an informant, Joey Morris, in the spring of 2007. Mr. Morris bought drugs from Daniel Lackey on April 2 and April 9, 2007. The officers recorded the transaction on April 9 by outfitting Mr. Morris with a body wire.
¶ 3 On May 7, the State charged Mr. Lackey with one count of delivery of a controlled substance. The same day, the court arraigned Mr. Lackey and set a trial date of July 2. Mr. Lackey was free after posting bond. Mr. Lackey then filed an affidavit of prejudice against the only judge in Jefferson County. On June 22, Mr. Lackey's first attorney moved to withdraw. The court denied the motion without prejudice. On July 20, Mr. Lackey's attorney again moved to withdraw, and the court granted his motion.
¶ 4 On July 23, Mr. Lackey appeared in court without counsel. The court discussed Mr. Lackey's finances and appointed a lawyer to represent him. The State told the court that the withdrawal of Mr. Lackey's first attorney restarted the speedy trial time. The court nevertheless asked Mr. Lackey to sign a speedy trial waiver. Mr. Lackey complained that he was being forced to sign the waiver. The court responded that it was purely Mr. Lackey's decision whether or not to sign the waiver. Mr. Lackey asked whether he could speak with his newly appointed attorney before signing the waiver. The court replied that the dates for hearings and the trial had to be set that day. Mr. Lackey signed the waiver. But the waiver does not set out a new trial commencement date or an expiration date for the waiver.
¶ 5 On August 10, the State moved for a continuance because one of its witnesses, Detective Miller, was ill. Mr. Lackey, through new counsel, objected to any continuance beyond the speedy trial date. The court granted the continuance and set the trial for October 1. On August 31, the State moved for a second continuance because a police witness was not available. The court moved the trial date to the next date a visiting judge would be available, October 29. And Mr. Lackey and his lawyer agreed to the October 29 trial date and signed a second speedy trial waiver.
¶ 6 The State complained, in September and October, that Mr. Lackey had violated the conditions of his release. And the court raised Mr. Lackey's bail. On October 19, Mr. Lackey's attorney moved to continue the trial date to November 5 to allow time to prepare. The court treated the defense request for a November 5 trial as a waiver of Mr. Lackey's speedy trial right for the period covered by the motion. The court set a hearing for October 26 to set a new trial date.
¶ 7 On October 26, Mr. Lackey's attorney again requested a November 5 trial start *1074 date. The court clerk responded that the day was no longer available, and December 10 was the next available date. The defense attorney responded that he was not available on December 10 because he would be in trial on another case. The court said that the next open trial date would be in March 2008. The trial court asked Mr. Lackey whether he would again waive his speedy trial rights. Mr. Lackey expressed his frustration with the proceedings dragging out for nearly one year; he also explained that the extended proceedings interfered with his search for a better job. He asked to speak with his attorney, who was appearing by phone, before responding to the court's request for a speedy trial waiver.
¶ 8 Mr. Lackey's attorney asked the court for a November 5, 2007, scheduling hearing to allow more time for him to discuss with Mr. Lackey the trial scheduling issue. Mr. Lackey had received an offer for an out-of-town job. On November 5, the court set Mr. Lackey's trial date for January 7 and 8, 2008. On December 28, 2007, at another hearing, the State reported that another case had priority and was also scheduled to go to trial on January 7 and 8. Mr. Lackey's attorney responded that he "previously preserved our speedy trial right," was prepared to go to trial on January 7, and refused to waive speedy trial. Report of Proceedings (RP) (Dec. 28, 2008) at 4. The court rescheduled Mr. Lackey's trial for February 4, 2008.
¶ 9 On January 25, the State again moved for a continuance because a witness was hospitalized with a heart condition. The State represented that the witness, Detective Miller, needed roughly four weeks. Mr. Lackey objected and urged that the court was obligated to try him on November 5, 2007, at the latest. The court reset the trial for March 24.
¶ 10 On February 4, Mr. Lackey moved to dismiss the case for violation of his right to speedy trial. The court concluded that the last commencement date for purposes of the speedy trial rule, CrR 3.3, was December 19, 2007,[1] and the State had 90 days from that date to try Mr. Lackey. So Mr. Lackey's speedy trial period would run on March 18, 2008, according to the court. RP (Feb. 4, 2008) at 28. The court denied his motion to dismiss and set the trial for March 24. Mr. Lackey objected that March 24 was beyond the date even the court said the speedy trial time would run, March 18. The court relied on a letter from Detective Miller's doctor that the detective should "defer trial and work assignments until March 2008" to find good cause to continue the trial until March 24. RP (Feb. 4, 2008) at 38-39.
¶ 11 On March 24, the court heard pretrial motions including a motion to suppress evidence gathered through the informant's body wire tapes. The court concluded that the body wire was authorized and denied the motion to suppress.
¶ 12 Mr. Lackey's trial started on March 25. The State called Mr. Morris as one of its witnesses but questioned him about the April 2, 2007, buy only; the State asked no questions about the April 9 transaction. Without objection, the court admitted both the tape and the transcript from the body wire that Mr. Morris wore on April 9. Mr. Lackey did not testify and called no witnesses. He tried to call a female cohort, Bonita Halverson, to testify about the April 2 events. But she asserted her right to remain silent. The jury found Mr. Lackey guilty on both counts.

DISCUSSION
Speedy TrialCrR 3.3
¶ 13 Mr. Lackey contends that the delays here violated his CrR 3.3 right to speedy trial. The State notes that continuances are discretionary with the trial judge and urges us to defer to those decisions. Br. of Resp't at 12-13. But exactly which decisions (of the many decisions to continue the trial date) we are supposed to defer to is unclear. And, just as importantly, it is unclear what the State would urge as tenable grounds for any specific decision to continue and whether and how such grounds meet the requirements of the various exceptions set out in CrR 3.3.
*1075 ¶ 14 The State then makes the general and conclusory statement that "[t]hese problems were not routine and were unavoidable." Br. of Resp't at 14. But again, the State offers nothing by way of analysis to explain why specific decisions were neither routine nor unavoidable. And there is no finding or explanation by the trial court on why the "problems" were neither routine nor unavoidable. CrR 3.3(f)(2) (requiring the court to state on the record or in writing the reasons for the continuance).
¶ 15 The application of CrR 3.3 to the facts of this case is a question of law that we review de novo. State v. Hardesty, 110 Wash.App. 702, 706, 42 P.3d 450 (2002), rev'd on other grounds, 149 Wash.2d 230, 66 P.3d 621 (2003). We read the rule to avoid unnecessary dismissal with prejudice, whenever possible. Id.
¶ 16 Mr. Lackey was free on bail, so he had a right to be tried within 90 days of the date he was arraigned. CrR 3.3(b)(2). He was arraigned on May 7, 2007. The court would then have had to assign a trial date of not later than approximately August 6, 2007. CrR 3.3(b)(2); CrR 8.1; CR 6. But Mr. Lackey's attorney withdrew, and that started the 90-day clock anew. See State v. Thomas, 95 Wash.App. 730, 738, 976 P.2d 1264 (1999).
¶ 17 On July 23, 2007, Mr. Lackey appeared in court without a lawyer and the court talked him into signing a waiver of speedy trial. RP (July 23, 2007) at 6-7, 9. Ultimately, however, Mr. Lackey, new defense counsel, and the State all agreed on a new trial date, October 29, 2007. And Mr. Lackey waived his right to speedy trial. RP (Aug. 31, 2007) at 7, 9-10; Clerk's Papers (CP) at 19.
¶ 18 This new speedy trial date would then have run on January 28, 2008, 90 days after October 29, 2007. CrR 3.3(c)(2)(i), (b)(2)(i); CrR 8.1; CR 6(a).
¶ 19 On October 19, 2007, Mr. Lackey's attorney moved to continue the trial date to November 5 to allow him time to prepare. This request would have extended the speedy trial time by five days, making the expiration date February 4, 2008. CrR 3.3(e)(3); CrR 8.1; CR 6(a). But, by the time the court got around to setting the new trial date, November 5 had already been taken by another case and so the court offered instead a trial start-date of December 10, 2007, which was within the new expiration period. RP (Oct. 26, 2007) at 4. There was certainly no agreement by Mr. Lackey to this date; and Mr. Lackey's lawyer was not available on that date, anyway. So on November 5, 2007, the trial court set the trial for January 7 and 8, 2008, without a waiver or agreement because of what we conclude from the record was court congestion. But this January date was also within the new expiration period.
¶ 20 Nevertheless, there were more delays. The State reported at the end of December 2007 that another case had priority and was also scheduled to go to trial on January 7 and 8, 2008. Mr. Lackey responded that he "previously preserved our speedy trial right," was prepared to go to trial on January 7, and refused to waive speedy trial. RP (Dec. 28, 2007) at 4. The court rescheduled Mr. Lackey's trial for February 4, 2008. Again, there is no waiver or agreement, and the cause for rescheduling the trial date is court congestion and unavailability of the government, a reason that does not qualify as an excluded period under the rule. CrR 3.3(e).
¶ 21 On January 25, 2008, the State again moved for a continuance because a witness was ill. The State represented that the witness, Detective Miller, needed roughly four weeks. An excluded period of four weeks would have tolled expiration of the speedy trial period, which we previously calculated as expiring February 4, until March 3. CrR 3.3(e)(3); CrR 8.1; CR 6(a). Mr. Lackey objected and told the trial court that it had to try him on November 5, 2007, at the latest. The trial court set the trial for March 24, 2008. And CrR 3.3(b)(5) appears to us to accommodate that trial date. It provides: "If any period of time is excluded pursuant to section (e), the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period." CrR 3.3(b)(5) (emphasis added). And the March 24 date appears to fall within "roughly four weeks" plus the 30 days provided by CrR 3.3(b)(5).
¶ 22 Because each of the continuances meets various CrR 3.3 criteria, we are constrained *1076 to hold that the trial court did not run afoul of Washington's speedy trial rule.

Constitution Based Right to A Speedy Trial
¶ 23 Both the federal and Washington state constitutions guarantee a criminal defendant's right to a speedy trial. U.S. Const. amend. VI; Const. art. I, § 22. "[T]he constitutional right to a speedy trial is not violated at the expiration of a fixed time, but at the expiration of a reasonable time." State v. Monson, 84 Wash.App. 703, 711, 929 P.2d 1186 (1997) (emphasis omitted). The Supreme Court has crafted a test to assist in evaluating whether an unconstitutional delay has occurred. Barker v. Wingo, 407 U.S. 514, 522-30, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The test weighs "the conduct of both the prosecution and the defendant." Id. at 529-30, 92 S.Ct. 2182. And, among other factors, the test requires that we consider the length of the delay, the reasons for the delay, whether the defendant complained about the delay, and any prejudice to the defendant. Id. at 530, 92 S.Ct. 2182.

Length of Delay
¶ 24 The presumption that a delay has prejudiced a defendant intensifies over time. Doggett v. United States, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Delays of eight months to one year are presumptively prejudicial. State v. Corrado, 94 Wash.App. 228, 233-34, 972 P.2d 515 (1999) (surveying several federal appellate decisions). Mr. Lackey was arraigned in May 2007 and brought to trial in March 2008. The second speedy trial waiver that Mr. Lackey signed gives consent for a trial on October 29, 2007. And Mr. Lackey began objecting to extensions of his trial date on October 26, 2007. Nearly 11 months elapsed before the State tried Mr. Lackey. This prong then weighs in Mr. Lackey's favor.

Reason for Delay
¶ 25 The State contends that Mr. Lackey's request for a judge other than Jefferson County's sole superior court judge caused many of the delays because a visiting judge had to preside over each proceeding and these delays were then not routine and avoidable. Br. of Resp't at 13. The State further asserts that the continuances based on Detective Miller's illness and another officer's unavailability are both valid reasons for continuing a trial. State v. Nguyen, 68 Wash. App. 906, 914, 847 P.2d 936 (1993).
¶ 26 The State sought two of its three continuances because of Detective Miller's heart condition. Those are well accepted reasons to continue a trial. And delays caused by Mr. Lackey's public defender are attributed to Mr. Lackey, not the State. Vermont v. Brillon, ___ U.S. ___, ___, 129 S.Ct. 1283, 1293, 173 L.Ed.2d 231 (2009). So Mr. Lackey's conflicts with his first defense attorney, which necessitated appointment of a new attorney, are attributable to him. And the unavailability of Mr. Lackey's second attorney in December is also chargeable to Mr. Lackey.
¶ 27 The State also invites us to conclude that delays occasioned by Mr. Lackey's filing an affidavit of prejudice against the only judge in Jefferson County should not be charged to the State. We disagree. Smaller counties may well face different challenges than larger counties when it comes to bringing criminal defendants to trial. But Mr. Lackey has the right to file an affidavit of prejudice. RCW 4.12.050. The court must, nonetheless, try Mr. Lackey within a reasonable time. So, for us, the county's difficulty in accommodating the affidavit of prejudice can be categorized as routine court congestion. Brillon, 129 S.Ct. at 1293. It should not be chargeable to Mr. Lackey. This factor then weighs in favor of neither party.

Defendant's Assertion of His Right
¶ 28 Mr. Lackey began to vigorously oppose any further delay in his trial beginning on October 26, 2007. This factor then weighs in Mr. Lackey's favor.

Prejudice to Defendant
¶ 29 We consider the three purposes for this constitutionally based rule to assess prejudice: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the *1077 possibility that the defense will be impaired." Barker, 407 U.S. at 532, 92 S.Ct. 2182.
¶ 30 Mr. Lackey was not confined before trial here, although he was incarcerated on another charge for part of the time he awaited trial on these charges. So the first interest is not at issue here. And Mr. Lackey does not suggest that the delay impaired his defense.
¶ 31 Mr. Lackey focuses most on the second protected interest, the anxiety and concern caused by a nearly 11-month delay from his arraignment until his trial. He complained in October 2007 that the delay was preventing him from taking a better job, which would have taken him out of state. And the record of the pretrial hearings from October 2007 until March 2008 reflects that Mr. Lackey was agitated and frustrated about the delays throughout that time. See, e.g., RP (Dec. 28, 2007) at 4; RP (Jan. 25, 2008) at 4. However, without showing that the delay either improved the State's case or damaged Mr. Lackey's case, the prejudice prong of the balancing test weighs against Mr. Lackey. See Corrado, 94 Wash.App. at 235, 972 P.2d 515 (finding no prejudice where the defendant did not show prejudice to the third interest, limiting impairment to the defense case, but did show prejudice to the first two interests).
¶ 32 We ultimately conclude that the State did not violate Mr. Lackey's constitutional right to speedy trial because the factors do not clearly militate in favor of Mr. Lackey.

Right to Counsel
¶ 33 Mr. Lackey also argues that he was deprived of his constitutional right to counsel at a critical phase of the proceedingsa hearing where he was encouraged to sign a speedy trial waiver. He argues this is structural error and, accordingly, he need not show prejudice. United States v. Hamilton, 391 F.3d 1066, 1070-72 (9th Cir.2004).
¶ 34 The right to speedy trial is a constitutional right. U.S. Const. amend. VI; Const. art. I, § 22. And so a hearing to waive speedy trial is a critical stage of the proceeding, and Mr. Lackey was entitled to counsel at that stage. See State v. Chenoweth, 115 Wash.App. 726, 736-37, 63 P.3d 834 (2003); see also United States v. Wade, 388 U.S. 218, 225, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) ("[T]he period from arraignment to trial was perhaps the most critical period of the proceedings, during which the accused requires the guiding hand of counsel.") (internal quotation marks and citations omitted); Hamilton, 391 F.3d at 1070-72.
¶ 35 Ultimately, however, Mr. Lackey, counsel, and the State all agreed on a new trial date; Mr. Lackey waived his right to speedy trial while represented by counsel on August 31, 2007. RP (Aug. 31, 2007) at 9-10; CP at 19. Appointment of new counsel also started a new trial date. See Thomas, 95 Wash.App. at 738, 976 P.2d 1264. So given the appointment of new counsel and Mr. Lackey's subsequent waiver and agreement to a new trial date, any error, assuming error, would appear to be harmless. And Mr. Lackey appears to concede as much: "The [earlier] waiver was legally immaterial, however, because the appointment of a new attorney restarts the statutory time for trial period." Br. of Appellant at 17.
¶ 36 We affirm the conviction.
WE CONCUR: BRIDGEWATER and HUNT, JJ.
NOTES
[1] We are unable to follow from the record how the trial court arrived at that date; and the State offers no explanation.